
UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TCA PROPERTIES, LLC, a Nevada Limited Liability Company; and GAS PROPERTIES, LLC, a Nevada Limited Liability Company,

    Plaintiffs,

v.

FJ MANAGEMENT, INC., a Utah Corporation formerly known as Flying J Inc., and DOES I through X

    Defendants.

3:14-CV-0267-LRH-WGC

ORDER

Before the court is plaintiffs TCA Properties, LLC ("TCA") and Gas Properties, LLC's ("Gas") (collectively "plaintiffs") renewed motion for partial summary judgment. Doc. #51.[1] Defendant FJ Management Inc. ("FJM"), formerly known as Flying J Inc., filed an opposition to the motion. Doc. #58.

Also before the court is defendant FJM's renewed cross-motion for partial summary judgment (Doc. #55) to which plaintiffs filed an opposition (Doc. #59).

///

///

///

---

[1] Refers to the court's docket number.

**I.     Facts and Background**

This is a breach of contract action between plaintiffs and FJM arising from a dispute over the interpretation and application of a grading and easement contract ("Grading Agreement").[2]

The parties in this suit are the owners of three separate but adjoining parcels of undeveloped property running parallel to Interstate 80 ("I-80") on the south side of the interstate and directly west of Robb Drive in Reno, Nevada. Defendant FJM's 40-acre parcel abuts I-80 and is adjacent to Robb Drive at the I-80 and Robb Drive interchange ("Robb Drive interchange"). FJM acquired the property in 2004 in order to build a truck stop. In 2005, FJM purchased from the State of Nevada a break in control of access and abutter's rights for the thin strip of land between the FJM property and Robb Drive. As a result of this contract, FJM gained an access easement to Robb Drive from the FJM property that included the right to develop an intersection from the property onto Robb Drive. In 2008, FJM filed bankruptcy and abandoned its plan for a truck stop. At this time, there is no developed intersection or roadway access to Robb Drive from the FJM property.

Plaintiff TCA's property directly abuts FJM's property to the west and plaintiff Gas' property directly abuts TCA's property. Both properties border I-80 but do not have access to either I-80 or Robb Drive. Rather, the only access to plaintiffs' parcels is through LeRoy Street which is not a major egress point for vehicles, but does provide both properties with access to public utilities.

In the hope of improving the value of all properties, the parties entered into the aforementioned Grading Agreement in March 2012. Pursuant to the Grading Agreement, plaintiffs agreed to move approximately 600,000 cubic yards of earth from the FJM property onto the TCA property. The removal of the overburden from the FJM property would bring that property to a surface elevation consistent with the existing Robb Drive interchange. The overburden would then be used on the TCA property to fill a large canyon that dissects the property. As a result of this

---

[2] A copy of the Grading Agreement is attached as Exhibit 2 to plaintiffs' renewed motion for partial summary judgment. *See* Doc. #51, Exhibit 2.

2

1  mass grading all three properties would be brought to the same level and create a "super pad" that
2  would allow for the eventual development of all the properties. In exchange for the grading of its
3  property and an easement across plaintiffs' properties for public utilities, defendant FJM was to
4  convey to plaintiffs a "right of way for access" across its property and the purchased abutter's rights
5  to Robb Drive.
6      This suit arose in 2013 when FJM allegedly anticipatorily breached the Grading Agreement
7  by refusing to fund and build an intersection on its property that would provide plaintiffs with
8  improved access onto Robb Drive. On March 31, 2014, plaintiffs filed the underlying complaint
9  against FJM alleging five causes of action: (1) breach of contract; (2) breach of the implied
10 covenants of good faith and fair dealing; (3) specific performance; (4) fraud in the inducement; and
11 (5) declaratory relief. Doc. #1, Exhibit A. On August 10, 2015, plaintiffs' filed the present motion
12 for partial summary judgment on their claims for breach of contract, specific performance, and
13 declaratory relief. Doc. #51. In response, FJM filed the present motion for partial summary
14 judgment on the plaintiffs' claim for declaratory relief. Doc. #55.

15 **II.    Legal Standard**
16     **A.  Summary Judgment**
17     Summary judgment is appropriate only when the pleadings, depositions, answers to
18 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
19 genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter
20 of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together
21 with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable
22 to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
23 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).
24     The moving party bears the burden of informing the court of the basis for its motion, along
25 with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,
26 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

3

must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

Where, as here, parties filed cross-motions for summary judgment on the same claims before the court, the court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). Accordingly, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id.* at 1134.

**B.  Contract Interpretation**

The starting point for the interpretation of any contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002); *see also, Klamatch Water Users Protective Ass'n v. Patterson*, 20 F.3d 1206, 1210 (9th Cir. 1999) ("Whenever possible, the plain language of the contract should be considered first."). When a contract contains clear and unequivocal provisions, those provisions shall be construed according to their usual and ordinary meaning. *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994). Further,

"[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamatch Water Users*, 20 F.3d at 1210. In Nevada, a contract provision "is ambiguous if it is reasonably susceptible to more than one interpretation." *DeNigris v. Las Vegas Police Managers & Supervisors Ass'n*, 2013 U.S. Dist. LEXIS 104908 at *6 (D. Nev. 2013). However, a contract "ambiguity does not arise simply because the parties disagree on how to interpret their contract." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).

### III.   Discussion

#### A.   Declaratory Relief

In this litigation and specifically through their motion, plaintiffs seek a declaration from the court that under the terms of the Grading Agreement defendant FJM is obligated to provide plaintiffs improved access to Robb Drive through the funding and development of an intersection on the FJM property. Plaintiffs contend that the term "access" as used in the Grading Agreement means improved access and, as such, FJM is solely responsible for the funding and development of the interchange. In opposition, FJM contends that the term "access" under the Grading Agreement simply requires a legal conveyance of property rights and does not require FJM to fund and develop the intersection.

The court has reviewed the pleading and documents filed in this matter and finds that the unambiguous language of the Grading Agreement only obligates FJM to provide plaintiffs with legal access to Robb Drive through a right of way access easement over both the FJM property and the associated abutter's rights FJM purchased from the State of Nevada in 2005, rather than improved access. The relevant provision of the Grading Agreement, Section 8, provides as follows:

> "Upon completion of (a) a Grading Project (including payment for all grading work and providing all lien waivers and releases of liens), (b) design of the access right-of-way to the reasonable satisfaction of the Parties, and (c) the exchange of the Grants of Easements identified in Section 7 above, FJM *shall grant, dedicate and convey to the TCA and GAS or the City (if necessary) a right of way for access to and from the GAS Property and the TCA Property to Robb Drive over the FJM Property*, and to grant additional easements associated with the Right of Way, for the use, grading, construction

5

1   and operation of the Right of Way."
2  Doc. #51, Exhibit 2, Grading Agreement, Section 8 (emphasis added). The plain language of this
3  section specifically states that defendant FJM is to convey "a right of way for access" from
4  plaintiffs' properties to Robb Drive. In contract law, the term "right of way of access" is a legal
5  term that has a predefined and understood definition in the legal community[3] and is the recognized
6  contract language to denote the conveyance of an access easement. *See e.g.,* BLACK'S LAW
7  DICTIONARY, 8th Ed., 2004, p. 548 (stating that the phrase "right of way" is primary recognized as
8  an access easement). An access easement is "[a]n interest in land owned by another person,
9  consisting in the right to use or control the land . . . for a specific limited purpose (such as to cross
10 it for access to a public road)." *Id.*
11      In their motion, plaintiffs focus solely on the word "access" within the phrase "right of way
12 for access." Plaintiffs then contend that in order to have "access" to Robb Drive they must actually
13 be able to use Robb Drive to access their properties through an intersection funded solely by FJM.
14 However, plaintiffs attempt to restrict interpretation of the Grading Agreement to only the word
15 "access" rather than the phrase "right of way for access" is improper. First, the Grading Agreement
16 repeatedly used the phrase "right of way" and "right of way for access" rather than the term
17 "access" to define the parties' rights and obligations under the contract. *See e.g.*, Doc. #51, Exhibit
18 2, Section 7 ("In exchange for the grant of the Right of Way described in Section [8] below . . ."; 
19 Section 8 ("The Parties contemplate that the alignment of the Right of Way shall be consistent with
20 the street section and alignment . . ."). Second, contract phrases that are terms of art - like "right of
21 way for access" - should be construed together rather than piecemeal. *See Klamatch Water Users*,
22 20 F.3d at 1210. This canon of construction is especially true where, as in this action, a particular
23 word - like "access" - is not used separately in the contract to define a parties' rights or obligations

---

25  [3] A right of way is defined as "[t]he right to pass through property owned by another" including "[t]he right to build and operate [a roadway] on land belonging to another." BLACK'S LAW DICTIONARY, 8th Ed., 2004,
26  p. 1351; *see also,* WEST'S ENCYCLOPEDIA OF AMERICAN LAW, Edition 2, 2008 (defining a "right of way" as "[a]n easement, a privilege to pass over the land of another").

6

nor separately defined in the contract. Thus, the court finds that the use of the well defined legal phrase "right of way for access" in the Grading Agreement only obligates FJM to convey legal access to plaintiffs to Robb Drive through an access easement.

Throughout their motion, plaintiffs emphasize what they "thought" the Grading Agreement provided and what they "understood" it to mean. However, the intent of a party as to why they entered into an agreement is irrelevant when the terms are clear and unambiguous. *Ringle v. Bruton*, 86 P.3d 1032, 1039 (2004) ("when a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written; the court may not admit any other evidence of the parties intent because the contract expresses their intent"). Further, the terms of the contract do not become ambiguous simply because the parties disagree on the interpretation of the terms. *See Galardi*, 301 P.3d at 366. And here, both parties have agreed that the language of the Grading Agreement is clear and unambiguous. *See* Doc. #51, Plaintiffs' Motion for Partial Summary Judgment, p. 18 ("the term is not ambiguous, since it is not reasonably susceptible to any other meaning."); Doc. #58, Defendant's Motion for Summary Judgment, p. 6 ("the contract is clear"). Thus, the intent of the parties as determined by the unambiguous language of the Grading Agreement was for the conveyance of an access easement.

The court further finds that plaintiffs' interpretation that the Grading Agreement obligates FJM to fund and construct the intersection is untenable. There is no language in the Grading Agreement, or any express or implied promise in the Grading Agreement, that obligates FJM to fund and construct an intersection on its property onto Robb Drive. Neither Section 8, which only requires a transfer of legal rights through an access easement, nor any other section in the Grading Agreement suggests - let alone requires - that FJM is responsible to fund and develop an intersection onto Robb Drive. Moreover, Section 8 does not require or even suggest that the land conveyed to plaintiffs must be improved in any way or manner beyond having been graded. Additionally, plaintiffs specifically recognized in the Grading Agreement that they were gaining only "access rights and easements" in the contract rather than improved access. *See* Doc. #51,

Exhibit 2, Grading Agreement, Section 2(D) ("in exchange for the access rights and easements granted to TCA and GAS pursuant to this agreement . . ."). Similarly, FJM specifically stated that it would grant plaintiffs access to Robb Drive "by granting appropriate easements across the FJM property" and abutter's rights. *See* Doc. #51, Exhibit 2, Grading Agreement, Recital F ("FJM has the right to grant [access to Robb Drive] to TCA and GAS from the TCA Property and the GAS Property by granting appropriate easements across the FJM Property."). Therefore, the court finds that based on the plain and unambiguous language of the Grading Agreement that defendant FJM is only obligated to provide plaintiffs with legal access, rather than improved access, to Robb Drive through the conveyance of an access easement. Accordingly, the court shall deny plaintiffs' motion for partial summary judgment and grant defendant FJM's motion for partial summary judgment on the plaintiffs' claim for declaratory relief.

### B. Specific Performance & Breach of Contract

Because the court has for the first time in this action interpreted the terms of the Grading Agreement, the court shall deny without prejudice plaintiffs' motion for partial summary judgment on the remaining claims for specific performance and breach of contract. The court shall grant the parties leave to review the court's order and file any renewed motions on these claims, if any, within thirty (30) days of this order.


IT IS THEREFORE ORDERED that plaintiffs' motion for partial summary judgment (Doc. #51) is DENIED in accordance with this order.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment (Doc. #55) is GRANTED in accordance with this order.

IT IS SO ORDERED.

DATED this 22nd day of March, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE